**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| JOHN SHELTON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FROST BANK,<br><br>Defendant. | Case No. 5:26-cv-03410-JKP-RBF |

# AMENDED CLASS ACTION COMPLAINT

Plaintiff Rion Hanson ("Plaintiff"), individually, and on behalf of all others similarly situated, brings this action against Defendant Frost Bank ("Defendant"). Plaintiff files this Amended Class Action Complaint by and through his attorneys, and alleges, based upon personal knowledge as to his own actions, and based upon information and belief and reasonable investigation by his counsel as to all other matters, as follows.

## I. INTRODUCTION

1. Defendant provides banking, investment, and wealth management services to individuals and businesses throughout Texas.[1]

2. Upon information and belief, on or around April 20, 2026, Defendant experienced a data breach incident in which unauthorized cybercriminals accessed its information systems and databases and stole Private Information belonging to Plaintiff and Class members (the "Data Breach"). Subsequent investigation determined that unauthorized actors had accessed and acquired

[1] https://www.frostbank.com/ (last visited Apr. 21, 2026).

files containing the following categories of sensitive personally identifying information ("PII"): names, Social Security numbers, financial account information, contact information, and addresses (collectively, "Private Information").

3. Because Defendant stored and handled Plaintiff's and Class members' highly sensitive Private Information, it had a duty and obligation to safeguard this information and prevent unauthorized third parties from accessing this data.

4. Ultimately, Defendant failed to fulfill this obligation, as unauthorized cybercriminals breached its information systems and databases and stole vast quantities of Private Information belonging to Plaintiff and Class members. The Data Breach—and the successful exfiltration of Private Information—were the direct, proximate, and foreseeable results of multiple failings on the part of Defendant.

5. The Data Breach occurred because Defendant failed to implement reasonable security protections to safeguard its information systems and databases. Moreover, before the Data Breach occurred, Defendant failed to inform the public that its data security practices were deficient and inadequate. Had Plaintiff and Class members been made aware of this fact, they would have never provided such information to Defendant.

6. Defendant's subsequent handling of the breach was also deficient. Defendant unreasonably delayed in informing victims of the Data Breach.

7. As a result of Defendant's negligent, reckless, intentional, and/or unconscionable failure to adequately satisfy its contractual, statutory, and common-law obligations, Plaintiff and Class members suffered injuries, but not limited to:

- Lost or diminished value of their Private Information;

- Out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information;

- Lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to the loss of time needed to take appropriate measures to avoid unauthorized and fraudulent charges;

- Time needed to investigate, correct and resolve unauthorized access to their accounts; time needed to deal with spam messages and e-mails received subsequent to the Data Breach;

- Charges and fees associated with fraudulent charges on their accounts; and

- The continued and increased risk of compromise to their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect their Private Information.

8. Accordingly, Plaintiff brings this action on behalf of himself and all those similarly situated to seek relief for the consequences of Defendant's failure to reasonably safeguard Plaintiffs' and Class members' Private Information; its failure to reasonably provide timely notification to Plaintiff and Class members that their Private Information had been compromised; and for Defendant's failure to inform Plaintiff and Class members concerning the status, safety, location, access, and protection of their Private Information.

## II. PARTIES

**Plaintiff Rion Hanson**

9. Plaintiff is a resident and citizen of Fort Worth, Texas. Plaintiff is a customer of Frost Bank.

**Defendant Frost Bank**

10. Frost Bank is a Texas tax-exempt trust with its headquarters at 111 W Houston Street, San Antonio, TX 78205. Defendant conducts business in Bexar County, Texas.

## III. JURISDICTION AND VENUE

11. This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) numerous Class Members are citizens of a different state that is diverse from Defendant, and (4) there are more than 100 Class Members.

12. This Court has personal jurisdiction over Defendant because it is incorporated under Texas law, its principal place of business is in Texas, and the acts and omissions giving rise to Plaintiff's claims occurred in this State.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant's principal place of business is in this District, and a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## IV. FACTUAL ALLEGATIONS

### A. Frost Bank– Background

14. Frost Bank provides banking, investment, and wealth management services to individuals and businesses throughout Texas.[2]

15. In order to provide its services, Defendant collects, maintains, and stores large volumes of Private Information belonging to its current and former customers, including Plaintiff and the Class, as part of its general business operations.

16. Upon information and belief, Defendant failed to implement necessary data security safeguards at the time of the Data Breach. This failure resulted in cybercriminals accessing

[2] https://www.frostbank.com/ (last visited Apr. 21, 2026).

the Private Information of Defendant's current and former customers—Plaintiff and Class members.

17. Current and former customers of Defendant, such as Plaintiff and Class members, made their Private Information available to Defendant with the reasonable expectation that any entity with access to this information would keep that sensitive and personal information confidential and secure from illegal and unauthorized access. They similarly expected that, in the event of any unauthorized access, these entities would provide them with prompt and accurate notice.

18. This expectation was objectively reasonable and based on an obligation imposed on Defendant by statute, regulations, industrial custom, and standards of general due care.

19. Unfortunately for Plaintiff and Class members, Defendant failed to carry out its duty to safeguard sensitive Private Information and provide adequate data security. As a result, it failed to protect Plaintiff and Class members from having their Private Information accessed and stolen during the Data Breach.

## B. <u>The Data Breach</u>

20. Upon information and belief, on or around April 20, 2026, Defendant detected unusual activity on its computer networks.[3]

21. Upon information and belief, the notorious ransomware group Everest gained unauthorized access to Defendant's IT Network.[4]

22. Upon information and belief, Everest compromised over 380 gigabytes of files and millions of database records containing Plaintiff's and Class Members' Private Information

---

[3] https://www.breachsense.com/breaches/frost-bank-data-breach/ (last visited Apr. 21, 2026).

[4] https://www.dexpose.io/everest-ransomware-attack-targets-frost-bank/ (last visited Apr. 21, 2026).

including their names, addresses, Social Security Numbers, Taxpayer Identification Numbers, bank account numbers, credit card information, financial reporting documents, employee identification information, and passport numbers.[5]

23. To date, Defendant has failed to provide impacted individuals with notice of the Data Breach or any specifics as to what information was compromised.

**C. Defendant's Many Failures Both Prior to and Following the Breach**

24. Defendant collects and maintains vast quantities of Private Information belonging to Plaintiff and Class members as part of its normal operations. The Data Breach occurred as direct, proximate, and foreseeable results of multiple failings on the part of Defendant.

25. First, Defendant inexcusably failed to implement reasonable security protections to safeguard its information systems and databases.

26. Second, Defendant failed to inform the public that its data security practices were deficient and inadequate. Had Plaintiff and Class members been aware that Defendant did not have adequate safeguards in place to protect such sensitive Private Information, they would have never provided such information to Defendant.

27. In addition to the failures that lead to the successful breach, Defendant's failure to inform victims of the Data Breach exacerbated the harm to Plaintiff and the Class. As a result, Plaintiff and Class members will suffer indefinitely from the substantial and concrete risk that their identities will be (or already have been) stolen and misappropriated.

28. In short, Defendant's myriad failures, including its failure to timely notify Plaintiff and Class members that their personal information had been stolen due to Defendant's security

---

[5] https://dailydarkweb.net/everest-group-breaches-frost-bank-citizens-bank-tokoparts-complete-aircraft-group-umiles-nutrabio/ (last visited Apr. 21, 2026).

failures, allowed unauthorized individuals to access, misappropriate, and misuse Plaintiff's and Class members' Private Information.

**D. <u>Data Breaches Pose Significant Threats</u>**

29. Data breaches have become a constant threat that, without adequate safeguards, can expose personal data to malicious actors. It is well known that PII, and Social Security numbers in particular, is an invaluable commodity and a frequent target of hackers.

30. The Identity Theft Resource Center's ("ITRC") Annual End-of-Year Data Breach Report for 2024 listed 3,158 total compromises, for which 1,350,835,988 individual victim notices were dispatched.[6] This is just 57 breaches short of 2023's record-breaking total of 3,205 data breaches.[7] But the astronomical figure of 1,350,835,988 victim notices represents a 211% increase over 2023's 353,027,892 victim notices, primarily due to five "mega-breaches" (breaches involving at least 100 million victims) which took place in 2024.[8]

31. Statista, a German entity that collects and markets data relating to, among other things, data breach incidents and the consequences thereof, confirms that the number of data breaches has been steadily increasing since it began a survey of data compromises in 2005 with 157 compromises reported that year, to a peak of 3,205 in 2023.[9] The number of impacted

---

[6] *2024 Data Breach Report*, Identity Theft Resource Center (January 2025), available at https://www.idtheftcenter.org/publication/2024-data-breach-report/.

[7] *2023 Data Breach Report*, Identity Theft Resource Center (January 2023), available at https://www.idtheftcenter.org/publication/2023-data-breach-report/.

[8] *2024 Data Breach Report*, Identity Theft Resource Center (January 2025), available at https://www.idtheftcenter.org/publication/2024-data-breach-report/; *2023 Data Breach Report*, Identity Theft Resource Center (January 2023), available at https://www.idtheftcenter.org/publication/2023-data-breach-report/.

[9] *Annual Number of Data Breaches and Exposed Records in the United States from 2005 to 2024*, Statista (Updated May 23, 2025), available at: https://www.statista.com/statistics/273550/data-breaches-recorded-in-the-united-states-by-number-of-breaches-and-records-exposed.

individuals has also risen precipitously from approximately 318 million in 2015 to 1.35 billion in 2024.[10]




Figure 1 – *Number of Data Breaches and Affected Individuals from 2005 to 2024.* [11]

32. This stolen PII is then routinely traded on dark web black markets as a simple commodity, with online banking login information costing an average of $100, full credit card details and associated details costing between $10 and $100, and comprehensive data packages enabling complete identity theft selling for $1,000.[12]

33. Further, as data breaches become ever more prevalent and as technology advances, computer programs can scan the internet to create a mosaic of information that could be used to

[10] *Id.*
[11] *Id.*
[12] Ryan Smith, *Revealed-how much is personal information worth on the dark web?*, Insurance News (May 1, 2023), available at https://www.insurancebusinessmag.com/us/news/breaking-news/revealed--how-much-is-personal-information-worth-on-the-dark-web-444453.aspx.

link compromised information to an individual in ways in a phenomenon known as the "mosaic effect." By and through this process, names, dates of birth, and contact information such as telephone numbers and email addresses, hackers and identity thieves can access users' other accounts by, for example, bypassing security questions and 2FA security with the comprehensive collection of information at their disposal.

34. Thus, because of this effect, cybercriminals and other unauthorized parties could use Plaintiff's and Class Members' Private Information to access, inter alia, email accounts and financial accounts, to engage in a wide variety of fraudulent activity against Plaintiff and Class Members, even when that specific category of information is not compromised in a given breach.

35. A particularly trouble example of this effect is the development of "Fullz" packages. A "Fullz" packages is a dosser of information that cybercriminals and other unauthorized parties can assemble by cross-referencing the Private Information compromised in a given data breach to publicly available data or data compromised in other data breaches. Automated programs can and are routinely used to create these dossiers and they typically represent an alarmingly accurate and complete profile of a given individual.

36. Therefore, through the use of these "Fullz" packages, stolen Private Information from this Data Breach can be easily linked to Plaintiff's and the proposed Class's phone numbers, email addresses, and other sources and identifiers. Thus, even if certain information such as emails, phone numbers, or credit card or financial account were not compromised in this Data Breach, criminals can easily create a Fullz package to sell for profit.

37. Upon information and belief, this has already transpired (and will continue to transpire) for Plaintiff and the Class. And any reasonable for any trier of fact will find that Plaintiff and other Class Members' stolen Private Information is being misused, and that such misuse is

fairly traceable to the Data Breach.

38. Given the nature of Defendant's Data Breach, as well as the length of the time Defendant's networks were breached and the long delay in notification to victims thereof, it is foreseeable that the compromised Private Information has been or will be used by hackers and cybercriminals in a variety of devastating ways. Indeed, the cybercriminals who possess Plaintiff's and Class members' Private Information can easily obtain Plaintiff's and Class members' tax returns or open fraudulent credit card accounts in Class members' names.

39. Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach, because credit card victims can cancel or close credit and debit card accounts.[13] The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change.

40. To date, Defendant has not offered its consumers identity theft monitoring services. The failure to offer services exposes Plaintiff and Class members to threats for years to come, particularly in light of the Private Information at issue here.

41. Despite the prevalence of public announcements of data breach and data security compromises, its own acknowledgment of the risks posed by data breaches, and its own acknowledgment of its duties to keep Private Information private and secure, Defendant failed to take appropriate steps to protect the Private Information of Plaintiff and Class members from misappropriation. As a result, the injuries to Plaintiff and Class members were directly and

---

[13] *See* Jesse Damiani, *Your Social Security Number Costs $4 On The Dark Web, New Report Finds*, Forbes (Mar 25, 2020), available at https://www.forbes.com/sites/jessedamiani/2020/03/25/your-social-security-number-costs-4-on-the-dark-web-new-report-finds/?sh=6a44b6d513f1. *See also Why Your Social Security Number Isn't as Valuable as Your Login Credentials*, Identity Theft Resource Center (June 18, 2021), available at https://www.idtheftcenter.org/post/why-your-social-security-number-isnt-as-valuable-as-your-login-credentials/.

proximately caused by Defendant's failure to implement or maintain adequate data security measures for its current and former customers.

## E. Defendant Had a Duty and Obligation to Protect Private Information

42. Defendant has an obligation to protect the Private Information belonging to Plaintiff and Class members. First, this obligation was mandated by government regulations and state laws, including FTC rules and regulations. Second, this obligation arose from industry standards regarding the handling of sensitive PII. Third, Defendant imposed such an obligation on itself with its promises regarding the safe handling of data. Plaintiff and Class members provided, and Defendant obtained, their information on the understanding that it would be protected and safeguarded from unauthorized access or disclosure.

### 1. FTC Act Requirements and Violations

43. The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision making. Indeed, the FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

44. In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established guidelines for fundamental data security principles and practices for business.[14] The guidelines note businesses should protect the personal information

[14] *Protecting Personal Information: A Guide for Business*, Federal Trade Comm'n (October 2016), available at https://www.ftc.gov/tips-advice/business-center/guidance/protecting-personal-information-guide-business (last visited Apr. 21, 2026).

that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct security problems.[15] The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[16] Defendant clearly failed to do any of the foregoing, as evidenced by the length of the Data Breach, the fact that the Breach went undetected, and the amount of data exfiltrated.

45. The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor the network for suspicious activity, and verify that third-party service providers have implemented reasonable security measures.

46. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by the FTCA. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

47. Additionally, the FTC Health Breach Notification Rule obligates companies that suffered a data breach to provide notice to every individual affected by the data breach, as well as notifying the media and the FTC. *See* 16 CFR 318.1, *et seq.*

---

[15] *Id.*
[16] *Id.*

48. As evidenced by the Data Breach, Defendant failed to properly implement basic data security practices. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and Class members' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA.

49. Defendant was fully aware of its obligation to protect the Private Information of its current and former customers, including Plaintiff and Class members. Defendant is a sophisticated and technologically savvy business that relies extensively on technology systems and networks to maintain its practice, including storing its customers' PII in order to operate its business.

50. Defendant had and continues to have a duty to exercise reasonable care in collecting, storing, and protecting the Private Information from the foreseeable risk of a data breach. The duty arises out of the special relationship that exists between Defendant and Plaintiff and Class members. Defendant alone had the exclusive ability to implement adequate security measures to its cyber security network to secure and protect Plaintiff's and Class members' Private Information.

**2. <u>Industry Standards and Noncompliance</u>**

51. As noted above, experts studying cybersecurity routinely identify businesses as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

52. Some industry best practices that should be implemented by businesses dealing with sensitive Private Information, like Defendant, include but are not limited to: educating all employees, strong password requirements, multilayer security including firewalls, anti-virus and anti-malware software, encryption, multi-factor authentication, backing up data, and limiting

which employees can access sensitive data. As evidenced by the Data Breach, Defendant failed to follow some or all of these industry best practices.

53. Other best cybersecurity practices that are standard in the industry include: installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protecting physical security systems; and training staff regarding these points. As evidenced by the Data Breach, Defendant failed to follow these cybersecurity best practices.

54. Defendant should have also followed the minimum standards of any one of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

55. Defendant failed to comply with these accepted standards, thereby permitting the Data Breach to occur.

**F. <u>Plaintiff and the Class Suffered Harm Resulting from the Data Breach</u>**

56. Like any data hack, the Data Breach presents major problems for all affected.[17]

57. The FTC warns the public to pay particular attention to how they keep personally identifying information including Social Security numbers and other sensitive data. As the FTC notes, "once identity thieves have your personal information, they can drain your bank account,

[17] Paige Schaffer, *Data Breaches' Impact on Consumers*, Insurance Thought Leadership (July 29, 2021), available at https://www.insurancethoughtleadership.com/cyber/data-breaches-impact-consumers.

run up charges on your credit cards, open new utility accounts, or get medical treatment on your health insurance."[18]

58. The ramifications of Defendant's failure to properly secure Plaintiff's and Class members' Private Information are severe. Identity theft occurs when someone uses another person's financial, and personal information, such as that person's name, address, Social Security number, and other information, without permission in order to commit fraud or other crimes.

59. According to data security experts, one out of every four data breach notification recipients become a victim of identity fraud.

60. Furthermore, PII has a long shelf-life because it contains different forms of personal information, it can be used in more ways than one, and it typically takes time for an information breach to be detected.

61. Accordingly, Defendant's wrongful actions and/or inaction and the resulting Data Breach have also placed Plaintiff and the Class at an imminent, immediate, and continuing increased risk of identity theft and identity fraud. According to a recent study published in the scholarly journal *Preventive Medicine Reports*, public and corporate data breaches correlate to an increased risk of identity theft for victimized consumers.[19] The same study also found that identity theft is a deeply traumatic event for the victims, with more than a quarter of victims still experiencing sleep problems, anxiety, and irritation even six months after the crime.[20]

62. There is also a high likelihood that significant identity fraud and/or identity theft has not yet been discovered or reported. Even data that has not yet been exploited by

---

[18] *Warning Signs of Identity Theft*, Federal Trade Comm'n, available at https://www.identitytheft.gov/#/Warning-Signs-of-Identity-Theft.

[19] David Burnes, Marguerite DeLiema, Lynn Langton, *Risk and protective factors of identity theft victimization in the United States*, Preventive Medicine Reports, Volume 17 (January 23, 2020), available at https://www.sciencedirect.com/science/article/pii/S2211335520300188?via%3Dihub.

[20] *Id.*

cybercriminals presents a concrete risk that the cybercriminals who now possess Class members' Private Information will do so at a later date or re-sell it.

63. Data breaches have also proven to be costly for affected organizations as well, with the average cost to resolve being $4.45 million dollars in 2023.[21]

64. Here, due to the Breach, Plaintiff and Class members have been exposed to injuries that include, but are not limited to:

a. Theft of Private Information;

b. Costs associated with the detection and prevention of identity theft and unauthorized use of financial accounts as a direct and proximate result of the Private Information stolen during the Data Breach;

c. Damages arising from the inability to use accounts that may have been compromised during the Data Breach;

d. Costs associated with time spent to address and mitigate the actual and future consequences of the Data Breach, such as finding fraudulent charges, cancelling and reissuing payment cards, purchasing credit monitoring and identity theft protection services, placing freezes and alerts on their credit reports, contacting their financial institutions to notify them that their personal information was exposed and to dispute fraudulent charges, imposition of withdrawal and purchase limits on compromised accounts, including but not limited to lost productivity and opportunities, time taken from the enjoyment of one's life, and the inconvenience, nuisance, and annoyance of dealing with all issues resulting from the Data Breach, if they were fortunate enough to learn of the Data Breach despite Defendant's delay in disseminating notice in accordance with state law;

e. The imminent and impending injury resulting from potential fraud and identity theft posed because their Private Information is exposed for theft and sale on the dark web; and

f. The loss of Plaintiff's and Class members' privacy.

---

[21] *Cost of a Data Breach Report 2023*, IBM Security, available at https://www.ibm.com/reports/data-breach?utm_content=SRCWW&p1=Search&p4=43700072379268622&p5=p&gclid=CjwKCAjwxOymBhAFEiwAnodBLGiGtWfjX0vRlNbx6p9BpWaOo9eZY1i6AMAc6t9S8IKsxdnbBVeUbxoCtk8QAvD_BwE&gclsrc=aw.ds.

65. Plaintiff and Class members have suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from their Private Information being accessed by cybercriminals, risks that will not abate within the limited time of credit monitoring offered by Defendant.

66. As a direct and proximate result of Defendant's acts and omissions in failing to protect and secure Private Information, Plaintiff and Class members have been placed at a substantial risk of harm in the form of identity theft, and they have incurred and will incur actual damages in an attempt to prevent identity theft.

67. Plaintiff retains an interest in ensuring there are no future breaches, in addition to seeking a remedy for the harms suffered as a result of the Data Breach on behalf of both himself and similarly situated individuals whose Private Information was accessed in the Data Breach.

## G. EXPERIENCES SPECIFIC TO PLAINTIFF

***Plaintiff Rion Hanson***

68. Plaintiff is a customer of Defendant. On information and belief, Plaintiff's Private Information was in Defendant's possession at the time of the Data Breach.

69. Plaintiff received a notice from Defendant dated May 20, 2026 stating:

> *What Information Was Involved.* The files involved contain one or more copies of a tax information form that would have included your name, address, Social Security or other taxpayer identification number and account number(s).

**Exhibit 1.**

70. After the Data Breach and as a result of the Data Breach, unknown cybercriminals have gained access to and misused Plaintiff's stolen Private Information. On May 27, 2026, Plaintiff received an email from Capital One notifying him that someone used his Private Information (including his name and Social Security number and/or driver's license number) to

obtain a $20,000.00 loan from Capital One using Plaintiff's line of credit. Plaintiff did not request this line of credit and did not authorize anyone else to request this line of credit.

71. Since the Data Breach, Plaintiff has paid $100 a year for credit monitoring services.

72. As a result of the Data Breach, Plaintiff has made reasonable efforts to mitigate the impact of the Data Breach, including, but not limited to, researching the Data Breach and reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud. Plaintiff has also spent several hours dealing with the Data Breach, valuable time he otherwise would have spent on other activities, including, but not limited to, work and recreation.

73. As a result of the Data Breach, Plaintiff has suffered anxiety due to the public dissemination of his personal information, which he believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and using his Private Information for purposes of identity theft and fraud. Plaintiff is concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

74. Plaintiff suffered actual injury from having his Private Information compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of his Private Information, a form of property that Defendant obtained from him; (b) violation of his privacy rights; and (c) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

75. As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. And,

as a result of the Data Breach, he is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

## VI. CLASS REPRESENTATION ALLEGATIONS

76. Plaintiff brings this action on behalf of himself and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the following class:

> All persons in the United States whose Private Information was accessed and/or compromised as a result of the Data Breach (the "Class").

Excluded from the Class are Defendant, its executives and officers, and the Judge(s) assigned to this case. Plaintiff reserves the right to modify, change or expand the Class definition after conducting discovery.

77. Numerosity: Upon information and belief, the Class is so numerous that joinder of all members is impracticable. The exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Defendant and obtainable by Plaintiff only through the discovery process. The members of the Class will be identifiable through information and records in Defendant's possession, custody, and control.

78. Existence and Predominance of Common Questions of Fact and Law: Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

a. When Defendant learned of the Data Breach;

b. Whether hackers obtained Class members' Private Information via the Data Breach;

c. Whether Defendant's response to the Data Breach was adequate;

d. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Private Information compromised in the Data Breach;

e. Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

f. Whether Defendant owed a duty to safeguard their Private Information;

g. Whether Defendant breached its duty to safeguard Private Information;

h. Whether Defendant had a legal duty to provide timely and accurate notice of the Data Breach to Plaintiff and Class members;

i. Whether Defendant breached its duty to provide timely and accurate notice of the Data Breach to Plaintiff and Class members;

j. Whether Defendant's conduct violated the FTCA;

k. Whether Defendant's conduct was negligent;

l. Whether Defendant's conduct was *per se* negligent;

m. Whether Defendant was unjustly enriched;

n. What damages Plaintiff and Class members suffered as a result of Defendant's misconduct;

o. Whether Plaintiff and Class members are entitled to actual and/or statutory damages; and

p. Whether Plaintiff and Class members are entitled to additional credit or identity monitoring and monetary relief.

79. Typicality: Plaintiff's claims are typical of the claims of the Class as Plaintiff and all members of the Class had their Private Information compromised in the Data Breach. Plaintiff's claims and damages are also typical of the Class because they resulted from Defendant's uniform wrongful conduct. Likewise, the relief to which Plaintiff is entitled to is typical of the Class because Defendant has acted, and refused to act, on grounds generally applicable to the Class.

80. Adequacy: Plaintiff is an adequate class representative because his interests do not materially or irreconcilably conflict with the interests of the Class he seeks to represent, he has retained counsel competent and highly experienced in complex class action litigation, and Plaintiff

intends to prosecute this action vigorously. Plaintiff and his counsel will fairly and adequately protect the interests of the Class. Neither Plaintiff nor his counsel have any interests that are antagonistic to the interests of other members of the Class.

81. Superiority: Compared to all other available means of fair and efficient adjudication of the claims of Plaintiff and the Class, a class action is superior. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Members of the Class can be readily identified and notified based on, *inter alia*, Defendant's records and databases.

82. Plaintiff knows of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

83. The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications and establish incompatible standards of conduct for Defendant.

## VII. CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
### (By Plaintiff on behalf of the Class)

84. Plaintiff incorporates and realleges the paragraphs above as if fully set forth herein.

85. Defendant owes a duty of care to protect the Private Information belonging to Plaintiff and Class members. Defendant also owes several specific duties including, but not limited to, the duty:

a. to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting Private Information in its possession;

b. to protect customers' Private Information using reasonable and adequate security procedures and systems compliant with industry standards;

c. to have procedures in place to detect the loss or unauthorized dissemination of Private Information in its possession;

d. to employ reasonable security measures and otherwise protect the Private Information of Plaintiff and Class members pursuant to the FTCA;

e. to implement processes to quickly detect a data breach and to timely act on warnings about data breaches; and

f. to promptly notify Plaintiff and Class members of the Data Breach, and to precisely disclose the type(s) of information compromised.

86. Defendant owes this duty because it had a special relationship with Plaintiff's and Class members. Plaintiff and Class members entrusted their Private Information to Defendant on the understanding that adequate security precautions would be taken to protect this information. Furthermore, only Defendant had the ability to protect its systems and the Private Information stored on them from attack.

87. Defendant also owes this duty because industry standards mandate that Defendant protect its customers' confidential Private Information.

88. Defendant also owes a duty to timely disclose any unauthorized access and/or theft of the Private Information belonging to Plaintiff and Class members. This duty exists to provide Plaintiff and Class members with the opportunity to undertake appropriate measures to mitigate

damages, protect against adverse consequences, and thwart future misuse of their Private Information.

89. Defendant breached its duties owed to Plaintiff and Class members by failing to take reasonable appropriate measures to secure, protect, and/or otherwise safeguard their Private Information.

90. Defendant also breached the duties it owed to Plaintiff and Class members by failing to timely and accurately disclose to them that their Private Information had been improperly acquired and/or accessed.

91. As a direct and proximate result of Defendant's conduct, Plaintiff and Class members were damaged. These damages include, and are not limited to:

- Lost or diminished value of their Private Information;
- Out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information;
- Lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to the loss of time needed to take appropriate measures to avoid unauthorized and fraudulent charges; and
- Permanent increased risk of identity theft.

92. Plaintiff and Class members were foreseeable victims of any inadequate security practices on the part of Defendant and the damages they suffered were the foreseeable result of the aforementioned inadequate security practices.

93. In failing to provide prompt and adequate individual notice of the Data Breach, Defendant also acted with reckless disregard for the rights of Plaintiff and Class members.

94. Plaintiff and Class members are entitled to damages in an amount to be proven at trial and injunctive relief requiring Defendant to, *inter alia*, strengthen its data security systems

and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class members.

**COUNT II**
**NEGLIGENCE *PER SE***
**(By Plaintiff on behalf of the Class)**

95. Plaintiff incorporates and realleges the paragraphs above as if fully set forth herein.

96. Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, imposes a duty on Defendant to provide fair and adequate data security to secure, protect, and/or otherwise safeguard the Private Information of Plaintiff and Class members.

97. Defendant violated the FTCA by failing to provide fair, reasonable, or adequate computer systems and data security practices to secure, protect, and/or otherwise safeguard Plaintiff's and Class members' Private Information.

98. Defendant's failure to comply with the FTCA constitutes negligence *per se*.

99. Plaintiff and Class members are within the class of persons that the FTCA is intended to protect.

100. It was reasonably foreseeable that the failure to protect and secure Plaintiff's and Class members' Private Information in compliance with applicable laws and industry standards would result in that Information being accessed and stolen by unauthorized actors.

101. As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class members have suffered, and continue to suffer, injuries and damages arising from the unauthorized access of their Private Information, including but not limited to theft of their personal information, damages from the lost time and effort to mitigate the impact of the Data Breach, and permanently increased risk of identity theft.

102. Plaintiff and Class members are entitled to damages in an amount to be proven at trial and injunctive relief requiring Defendant to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class members.

**COUNT III**
**BREACH OF IMPLIED CONTRACT**
**(By Plaintiff on behalf of the Class)**

103. Plaintiff incorporates and realleges the paragraphs above as if fully set forth herein.

104. Plaintiff and Class members provided Defendant with their Private Information with the reasonable expectation and mutual understanding that Defendant would safeguard their Private Information from unauthorized disclosures.

105. By providing their Private Information, and upon Defendant's acceptance of this information, Plaintiff and the Class, on one hand, and Defendant, on the other hand, entered into implied-in-fact contracts for the provision of data security, separate and apart from any express contract entered into between the parties.

106. The implied contracts between Defendant and Plaintiff and Class members obligated Defendant to take reasonable steps to secure, protect, safeguard, and keep confidential Plaintiff's and Class members' Private Information. The terms of these implied contracts are described in federal laws, state laws, and industry standards, as alleged above. Defendant expressly adopted and assented to these terms in its public statements, representations and promises as described above. Defendant knew of the sensitivity of the Private Information it stored in its network and systems and its obligation to protect it against unauthorized disclosures.

107. The implied contracts for data security also obligated Defendant to provide Plaintiff and Class members with prompt, timely, and sufficient notice of any and all unauthorized access or theft of their Private Information.

108. Defendant breached these implied contracts by failing to take, develop and implement adequate policies and procedures to safeguard, protect, and secure the Private Information belonging to Plaintiff and Class members; allowing unauthorized persons to access Plaintiff's and Class members' Private Information; and failing to provide prompt, timely, and sufficient notice of the Data Breach to Plaintiff and Class members, as alleged above.

109. As a direct and proximate result of Defendant's breaches of the implied contracts, Plaintiff and Class members have been damaged as described herein, will continue to suffer injuries as detailed above due to the continued risk of exposure of Private Information, and are entitled to damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually, and on behalf of all members of the Class, respectfully requests that the Court enter judgment in their favor and against Defendant, as follows:

A. That the Court certify this action as a class action, proper and maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure; declare that Plaintiff is a proper class representative; and appoint Plaintiff's Counsel as Class Counsel;

B. That the Court grant permanent injunctive relief to prohibit Defendant from continuing to engage in the unlawful acts, omissions, and practices described herein;

C. That the Court award Plaintiff and Class members compensatory, consequential, and general damages in an amount to be determined at trial;

D. That the Court award Plaintiff and Class members statutory damages, and punitive or exemplary damages, to the extent permitted by law;

E. That the Court award to Plaintiff the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses;

F. That the Court award pre- and post-judgment interest at the maximum legal rate;

G. That the Court award grant all such equitable relief as it deems proper and just, including, but not limited to, disgorgement and restitution; and

H. That the Court grant all other relief as it deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of himself and the putative Class, demands a trial by jury on all issues so triable.

Date: July 10, 2026

Respectfully Submitted,

By: *<u>/s/ William B. Federman</u>*
William B. Federman
Texas Bar No. 00794935
**FEDERMAN & SHERWOOD**
4131 N Central Expressway, Ste. 900
Dallas, Texas 75204
Tel: (800) 237-1277
E: wbf@federmanlaw.com

***Attorney for Plaintiff and the Proposed Class***

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been served on counsel of record via the Court's CM/ECF filing system on Friday, July 10, 2026.

*<u>/s/ William B. Federman</u>*
William B. Federman